MARY MOORE, Respondent, *v.* CITIZENS' MUTUAL LIFE INSURANCE ASSOCIATION, Appellant.

*Policy of life insurance — when "yardmaster" construed as "yardmaster or yard conductor."*

A person killed March 20, 1892, was at the time in the employment of a railroad company as a yard conductor, and was in the discharge of his duties. His life was insured by a contract of insurance which stated his occupation to be that of yard conductor or yardmaster, and contained the provision that in the event of his death occurring from any cause arising from his occupation as yardmaster, all claim under such insurance policy was waived by him.

Upon the trial of an action brought to recover the amount of such insurance the proof showed that at the time of his taking out the policy, in June, 1891, he was yard conductor, and the September following he became yardmaster, and so continued until February 9, 1892. That during February, 1892, he acted in a double capacity as yardmaster and as yard conductor, with the title of yard conductor, and that at the time of the accident he was yard conductor.

The yardmaster in the shifting of cars and making up of trains had charge of yard conductors, who acted under his orders, and had charge of the crews that did the work of shifting the cars and making up the trains.. The duties of both the yardmaster and yard conductor were extra hazardous.

*Held*, that the use of the term "yardmaster" in the clause of the contract, whereby a claim thereunder was waived, in case the insured's death occurred from any cause arising from his occupation as yardmaster, meant the same as his occupation as previously described therein, viz., as yard conductor or yardmaster;

That under the provisions of the policy, the death of the insured having occurred by reason of his being engaged in the discharge of his duty as yard conductor, it was error to direct a verdict in favor of the plaintiff.

APPEAL by the defendant, Citizens' Mutual Life Insurance Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 3d day of March, 1893, upon the verdict of a jury for $2,070.20, by direction of the court, after a trial at the Monroe Circuit.

*L. C. Whiton*, for the appellant.

*Walter S. Hubbell*, for the respondent.

HAIGHT, J.:

This action was brought to recover the sum of $2,000 upon a policy of insurance issued by the defendant upon the life of John Moore, the husband of the plaintiff, and payable to her as beneficiary.

Moore was killed on the 20th day of March, 1892.  The evidence tends to show that he was in the employ of the Buffalo, Rochester and Pittsburgh railroad as a yard conductor, and was in the discharge of his duty as such; that he had been sent out by the yardmaster at Rochester to take some cars down to the Rome, Watertown and Ogdensburgh railroad near Charlotte, and to get some cars therefrom; that as they arrived near Charlotte he got upon the tender of the engine and was engaged in giving signals to the engineer; that whilst so engaged in some way he slipped or fell therefrom and was run over and killed.

The defense was that the contract of insurance was entered into by the defendant subject to the following:

"I, John Moore, of Rochester, Monroe county, New York, having applied to the Citizens' Mutual Life Insurance Association of New York, under date of June 4th, 1891, for $2,000 insurance on my life, and having stated in said application that my occupation was that of a yard conductor or yardmaster, do hereby certify that my duties do not require me to shift or switch cars in the yard, and I do hereby agree to waive, and do waive, all claim under policy No. 7356, issued to me, in the event of my death occurring from any cause arising from my occupation as said yardmaster, and that in consideration of the statements and representations in this waiver said policy is delivered to me.

"Dated at Rochester, N. Y., this 6th day of July, 1891.
"(Signed)                         JOHN MOORE.
"Witness — J. F. WELLINGTON."

In his application he had described his occupation as that of yard conductor.  The evidence tends to show that he had been both yardmaster and yard conductor; that at the time of making the application he was yard conductor; in September following he again became yardmaster, and so continued until February, 1892; that during February, 1892, he acted in a double capacity, as night yardmaster and yard conductor, with the title of yard conductor, and that at the time of the accident he was yard conductor.  The yardmaster had charge of the yard conductors in the shifting of cars and the making up of trains.  The yard conductor acted under the orders of the yardmaster, and had charge of the crew which did

the work of shifting the cars and making up the trains. His duties as yardmaster or yard conductor were extra hazardous, and, as we have seen, he had served and continued to serve in both capacities from time to time. It was under these circumstances that the company exacted the execution of the instrument in question before delivering the policy of insurance. In it, as we have seen, he refers to his occupation as that of a " yard conductor or yardmaster." He then waives all claims under the policy issued to him in the event of his death occurring from any cause arising " from my occupation as said yardmaster." True, in this connection he does not make use of the term " yard conductor," but he speaks of his occupation, and evidently refers to it as previously described as that of " yard conductor or yardmaster." In other words, he treats both as one occupation. · It appears to us that this is the fair and reasonable interpretation of the instrument. This view is strengthened from the fact that at that time he was a yard conductor, as he describes himself in his application.

It is undisputed that his cause of death arose from his occupation as yard conductor. It consequently follows that if we are correct in our view as to the proper construction of the instrument, a verdict for the plaintiff should not have been directed.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

Dwight, P. J., and Lewis, J., concurred.

Judgment appealed from reversed and new trial granted, costs to abide the event.